1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MICHAEL SCOTT TAYLOR, LORI            Case No.  1:18-cv-00760-BAM
     MELVILLE,
12                                         **ORDER RE CROSS MOTIONS FOR**
                    Plaintiffs,            **SUMMARY JUDGMENT**
13
            v.                             (Doc. Nos. 85, 93)
14
     COUNTY OF CALAVERAS, et al.,          **ORDER SETTING STATUS**
15                                         **CONFERENCE**
                    Defendants.
16                                         January 11, 2021 at 9:00 a.m.

17

18          Plaintiffs Michael Scott Taylor and Lori Melville (collectively "Plaintiffs") bring this civil

19   action against Defendants County of Calaveras, Calaveras County Sheriff Rick DiBasilio, Deputy

20   Geoffrey Ramos, Deputy Tallya-Ann Mattos and Deputy Kevin Stevens (collectively

21   "Defendants").  Plaintiffs allege violations of their civil rights in connection with Plaintiff

22   Taylor's arrest at his home following a complaint of a weapon firing close to Plaintiffs'

23   neighbors.  The parties' cross-motions for summary judgment are now pending before the Court.[1]

24   (Doc. Nos. 85, 93.)

25          The motions were heard before the Honorable Barbara A. McAuliffe, United States

26   Magistrate Judge, on September 18, 2020.  Plaintiffs' Counsel Panos Lagos appeared by

27   ───────────────

28   [1]  The parties have consented.to the jurisdiction of the United States Magistrate Judge for all
     purposes pursuant to 28 U.S.C. § 636(c).  (Doc. Nos. 14, 29, 30, and 31.)

                                            1

telephone.  Defendants' Counsel Cornelius Callahan appeared by telephone.

Having considered the record, the parties' briefs and arguments, the relevant law, and supplemental filings, the Court DENIES Plaintiffs' motion for partial summary judgment in its entirety, and GRANTS IN PART and DENIES IN PART Defendants' motion for summary judgment.

## I.      BACKGROUND

Plaintiffs initiated this action on June 4, 2018.  (Doc. No. 1.)  According to the complaint, for one to two years prior to June 24, 2017, Plaintiffs and their adjoining neighbors, Brian David Lopez and Rhonda Lee Lopez,[2] were not very neighborly, making calls and complaints regarding each other to local law enforcement, which caused personal animus.  Plaintiff Taylor also was known as a local gadfly, vigorously expressing his opinions and complaints, including his known dislike and district of local law enforcement.

On or about June 24, 2017, Mr. and Mrs. Lopez called 9-1-1 and reported to the Calaveras County Sheriff's Department that Plaintiff Taylor willfully discharged a firearm in the direction of the Lopez residence.  The Sheriff's department dispatched deputy defendants Geoffrey Ramos, Talya-ann Mattos and Kevin Stevens ("Deputy Defendants") to the Plaintiffs' residence.  While Plaintiffs were in or standing next to their swimming pool, casually dressed and with no weapons in their hands, the Deputy Defendants entered Plaintiffs' property with drawn firearms and pointed them at Plaintiffs.  Plaintiffs were ordered to place their hands up.  They obeyed. Plaintiff Taylor was ordered to walk toward the Deputy Defendants.  Plaintiff Taylor obeyed the order, walked toward the Deputy Defendants with his hands up and stated, "Why are you here?", "You need a warrant to be on my property", "I don't talk to cops without an attorney", "If you don't have a warrant, get off my property", and "Don't shoot me on my own property".  (Doc. No. 1 at 6-7.)[3]  The Deputy Defendants did not respond.

---

[2]  Brian David Lopez and Rhonda Lee Lopez were originally named as defendants, but they have been dismissed with prejudice.  (Doc. No. 77, 78.)

[3]  Unless otherwise noted, all citations are to CM/ECF document numbers with page citations corresponding to CM/ECF pagination.

After Plaintiff Taylor arrived at the deputies' patrol vehicle, Plaintiff Taylor complied with orders and placed his hands on the vehicle.  Plaintiff Taylor stated, "Don't jack me up." (Doc. No. 1 at 7.)  Despite this request, Plaintiff Taylor's arms were twisted behind his back. After he was handcuffed, Plaintiff Taylor was slammed onto the vehicle with his body.  While being placed in the patrol vehicle, the Deputy Defendants also caused Plaintiff Taylor's head to strike the vehicle's roof.  The Deputy Defendants further ignored Plaintiff Taylor's repeated requests that the overly tight handcuffs be loosened.  Plaintiff Taylor alleges that he received medical treatment shortly after the incident for the serious physical injuries he sustained.

Plaintiffs allege that no questions were asked of them and no explanations were given to them for the presence of the Deputy Defendants before Plaintiff Taylor's arrest.  After being handcuffed, Plaintiff Taylor was informed that he was arrested for resisting arrest.  Plaintiffs claim that no investigation was conducted to determine the legitimacy or merits of the 9-1-1 call before Plaintiff Taylor was arrested.

On the way to the county jail, while handcuffed and in the back of the patrol vehicle, Plaintiff Taylor called the Deputy Defendants cowards.  After arriving at the county jail, Plaintiff Taylor invoked his *Miranda* rights and told deputy doe defendants that he did not want to answer their questions without an attorney.  Deputy doe defendants at the jail reportedly told Plaintiff Taylor that if he did not answer their medical questions, then he would not be getting out of jail. Plaintiff Taylor claims that his release from the county jail was deliberately delayed for 13 hours until his release on June 25, 2017 on his promise to appear at the County Superior Court to answer charges for violating California Penal Code §§ 64(f) (drunk in public) and 148(a)(1) (resisting arrest).  Plaintiffs claim that these reported accusations were false and fabricated because they were not under the influence at the time of the incident and did not resist the Deputy Defendants.

On or about July 19, 2017, when informed by the county district attorney that no criminal charges would be brought concerning his June 24, 2017 arrest, Plaintiff Taylor discovered that an additional criminal charge consisting of a violation of California Penal Code § 246.3(a) (willfully discharging firearm in grossly negligent manner) had been considered and rejected by the district

1    attorney related to the 9-1-1 call for service by Mr. and Mrs. Lopez.

2        Plaintiffs forward the following claims:  (1) violations of the First and Fourth

3    Amendments under 42 U.S.C. § 1983 against Defendants Ramos, Mattos, Stevens and Does 1-20;

4    (2) municipal and supervisory liability under 42 U.S.C. § 1983 against Defendants County of

5    Calaveras, Sheriff Rick DiBasilio and Does 21-30; (3) state civil rights violations under

6    California Civil Code § 52.1 against Defendants County of Calaveras, Ramos, Mattos, Stevens

7    and Does 1-20; (4) assault and battery against Defendants County of Calaveras, Ramos, Mattos,

8    Stevens and Does 1-20; (5) false arrest/false imprisonment against Defendants County, Ramos,

9    Mattos, Stevens and Does 1-20; (6) negligence against Defendants County of Calaveras,

10    DiBasilio, Ramos, Mattos, Stevens and Does 1-20; and (7) intentional infliction of emotional

11    distress against Defendants County of Calaveras, Ramos, Mattos, Stevens, and Does 1-20.

12        Plaintiffs now move for partial summary judgment on all of their claims with the

13    exception of the Fourth Amendment excessive force and fabricated evidence claims and certain

14    state law claims.  (Doc. No. 85-1 at 17.)  Defendants opposed the motion, arguing that Plaintiffs

15    are not entitled to summary judgment on these claims.  (Doc. No. 100.)  Plaintiffs replied.  (Doc.

16    No. 104.)

17        Defendants concurrently move for summary judgment on all of Plaintiffs' claims.  (Doc.

18    No. 93.)  Plaintiffs opposed the motion, and Defendants replied.  (Doc. Nos. 99, 105.)

19        Following the hearing on the parties' cross-motions for summary judgment, and due to

20    deficiencies in Plaintiffs' papers, the Court directed Plaintiffs to file a response to Defendants'

21    Separate Statement of Undisputed Facts in Support of Summary Judgment, or Alternatively

22    Partial Summary Judgment (Doc. No. 94) as required by Local Rule 260(b).  (Doc. No. 108.)  The

23    Court subsequently granted Plaintiffs leave to file supplemental briefing.  (Doc. No. 110.)

24    Plaintiffs' filed their response on September 30, 2020, (Doc. No. 111), and their supplemental

25    brief on October 1, 2020 (Doc. No. 112).  Defendants' filed their respective replies on October 13

26    and October 16, 2020.  (Doc. Nos. 113, 114.)  Plaintiffs also filed a notice of supplemental

27    authority on November 4, 2020.  (Doc. No. 115.)

28    ///

1

**II.      SUMMARY JUDGMENT EVIDENCE**

2      On June 24, 2017, Plaintiff Taylor shot a gun near the residence of Rhonda Lopez.  Mrs.

3 Lopez called the Calaveras County Sheriff's Office and complained about Plaintiff Taylor

4 shooting a gun near the Lopez residence.  (Doc. No. 87, Plaintiffs' Separate Statement of

5 Undisputed Facts ("PSSUF") at ¶ 1; Doc. No. 94, Defendants' Separate Statement of Undisputed

6 Facts ("DSSUF") at ¶ 2).  It was reported to deputies that Plaintiff Taylor possibly had been

7 drinking and was shooting very close to the Lopez residence.  (PSSUF at ¶ 1; DSSUF at ¶¶ 3, 4.)

8 Plaintiff Taylor was listed as a 2 Deputy response and a threat to officer safety in the County

9 records.  (DSSUF at ¶ 7-8; Doc. No. 86, Joint Statement of Undisputed Facts ("JSUF") at ¶ 17).

10      The Deputy Defendants--Deputies Mattos, Ramos and Sergeant Stevens—responded.

11 (PSSUF at ¶¶ 3, 4, 26; DSSUF at ¶ 9.)  They arrived in two vehicles, which they parked on the

12 public roadway near Plaintiffs' property.  (PSSUF at ¶¶ 25, 27; DSSUF at ¶ 10.)  The parties

13 dispute whether the Deputy Defendants arrived "between" Plaintiffs' property and the Lopez

14 property and whether Plaintiffs' property is comprised of one or two lots.   Defendants assert that

15 there are three parcels of land involved in this incident:  the Lopez residence at 8570 Cave City

16 Road, the Taylor residence at 8360 Cave City Road, and the empty lot in between the two at 8606

17 Cave City Road.  (Doc. No. 100 at 10.)  Defendants claim that the majority of interactions

18 occurred on the empty lot.  (*Id.*)  Plaintiffs contend, however, that the Deputy Defendants' arrival

19 was not "between" Plaintiffs' property and the Lopez property.  Instead, the Deputy Defendants'

20 arrival was at the rear two driveways to Plaintiffs' property off of Cave City Road.  (Doc. No. 99-

21 3; Melville Decl. at ¶ 4.)

22      Upon arrival, no gunshots were heard by the Deputy Defendants.  (JSUF at ¶ 12.)  At the

23 time of contact with the Deputy Defendants, Plaintiff Taylor was dressed in swim trunks and tank

24 top and he displayed no weapon.  (JSUF at ¶ 4; Doc. No. 101 at 12.)  It is undisputed that the

25 Deputy Defendants did not have a warrant and no consent was provided for their entry onto

26 Plaintiffs' property.  (JSUF at ¶¶ 5, 6.)  The parties' version of the remaining events again

27 diverges.

28 ///

### A.  Plaintiff's Version of Events [4]

Just before contact with the deputies, Plaintiffs Taylor and Melville were talking by the pool and neither had been drinking. At the time of his interaction with the deputies on June 24, 2017, Plaintiff Taylor was not under the influence of anything.  (Doc. 99-2; Taylor Decl. at ¶ 5.) Plaintiff Taylor was notified by Plaintiff Melville that the police were on their property and had their guns pulled. (*Id.*; Doc. No. 99-3, Melville Decl. at ¶ 4.)  Plaintiff Taylor was standing facing Plaintiff Melville and a boat cover structure was behind him.  (Doc. No. 99-3, Melville Decl. at ¶ 4.)  Plaintiff Taylor turned his head and heard Deputy Mattos say "Michael Taylor, we want to talk to you." (Doc. 99-2; Taylor Decl. at ¶ 6; Doc. No. 99-3, Melville Decl. at ¶ 4.)  While standing next to Plaintiff Melville, keeping his hands in the air at all times and never putting them down to his sides, and with the boat cover structure interfering with his ability to see Deputy Mattos, Plaintiff Taylor responded with, "Unless you have a warrant, get the fuck off my property" and/or "Get off my property." (Doc. 99-2; Taylor Decl. at ¶ 6.)  Deputy Mattos responded with the words, "We don't need a fucking warrant, you're under arrest, put your hands in the air and come towards us."  (*Id.*)

Following this exchange, Plaintiff Taylor turned and cleared the boat cover structure by the pool and the Deputy Defendants--Stevens, Mattos and Ramos--were in Plaintiffs' yard

---

[4]  Plaintiffs' moving papers contain only a "general statement of facts" and fail to provide a chronological narrative of events supported by citations to the record.  (Doc. No. 85-1 at 18-20.) Plaintiffs' declarations in support of the motion also fail to provide a chronological, narrative account.  (Doc. Nos. 91, 92.)  The parties bear the burden of supporting their motions and oppositions with the papers they wish the Court to consider and/or by specifically referencing any other portions of the record for consideration. *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).  Despite this apparent deficiency, the Court reconstructed Plaintiffs' version of events primarily based on the Declarations of Plaintiffs Taylor and Melville in support of their opposition to Defendants' motion for summary judgment.  (Doc. Nos. 99-2, 99-3.)  Evidentiary objections are addressed separately.

Following oral argument and as ordered by the Court, Plaintiffs filed a supplemental response to Defendants' Separate Statement of Undisputed Facts and Defendants filed a reply. (Doc. Nos. 111, 113.)  The Court has reviewed Plaintiffs' supplemental response and Defendants' reply, but in the interest of judicial economy, elects not to summarize the additional evidence citations here.  The parties' supplemental papers have not altered the Court's ultimate conclusion, and the material facts remain in dispute.

approximately 10 – 15 feet in front of a patrol vehicle in Plaintiffs' driveway pointing their weapons at Plaintiffs.  They were approximately 20 feet away from Plaintiff Taylor.  The Deputy Defendants' weapons included military grade assault rifles by Stevens and Ramos and a handgun by Deputy Mattos. When Plaintiff Taylor saw the weapons drawn and pointed at them, it got him very angry. He started yelling, cussing, screaming, calling the Deputy Defendants cowards, and asking why they were pointing assault weapons at them. This occurred before Plaintiff Taylor got to a patrol vehicle and was handcuffed. (*Id.* at ¶ 7.)

Plaintiff Taylor obeyed the Deputy Defendants' order to walk towards them.  He responded with, "Don't shoot or murder me on my own property". (*Id.* at ¶ 9.)  While doing so, Plaintiff Taylor noticed Deputy Mattos' finger on the trigger of her handgun which was shaking in her hand. Plaintiff Taylor told her that she needed more training. He also said, "Yeah, come on, you came here to murder me on my own property – do it, just shoot me," "that's what you're here to do." (*Id.*)  He also called the Deputy Defendants "cowards" and "self-serving mother fuckers." (*Id.*)  He stated to the deputies, "What are you going to do, shoot me? Go ahead, fucking shoot me." (*Id.*)

The Deputy Defendants advanced towards Plaintiff Taylor and eventually encircled him in the middle of Plaintiffs' backyard. As Plaintiff Taylor walked towards the patrol vehicle, he repeatedly asked why he was being arrested. (*Id.*)  None of the deputies answered his question and he was not told why they were on his property. (*Id.*)  At all times, Plaintiff Taylor had his hands up in the air with nothing in them.  (*Id.*)

After Plaintiff Taylor arrived at the patrol vehicle, he was ordered to put his hands on the vehicle.  Before complying, Plaintiff Taylor said, "As soon as I put my hands on the car, don't start yelling 'stop resisting' and beat the shit out of me" and "Don't jack me up". (*Id.* at ¶ 12.)  During the process of handcuffing Plaintiff Taylor, the Deputy Defendants twisted and bent his arms and wrist in a manner which caused him pain.  (*Id.*)  The handcuffs were applied in overly tight fashion.  (*Id.* at ¶ 16.)  While being guided into the patrol vehicle by one of the deputies, Plaintiff Taylor's head struck the edge of the patrol vehicle.  (*Id.*)

///

Plaintiff Melville lost sight of Plaintiff Taylor after he was escorted to the patrol vehicle. (Doc. No. 99-3 at ¶¶ 8, 10.)  After she lost sight of Plaintiff Taylor, Deputy Ramos came up to Plaintiff Melville as she was standing next to the pool, asking for her name, relationship to Plaintiff Taylor and if she lived at the premises.  Plaintiff Melville asked Deputy Ramos why they were on Plaintiffs' property and why Plaintiff Taylor had been arrested. Deputy Ramos' response was, "Because he resisted arrest." at which time Plaintiff Melville told him, "He did not resist arrest."  (*Id.* at ¶ 10.)   Plaintiff Melville then proceeded to ask Deputy Ramos again, "But why are you here?" (*Id.*) Deputy Ramos' response was that a neighbor had called and said Plaintiff Taylor was shooting at their house.  After declining to give further information on the identity of those neighbors, Deputy Ramos asked why Plaintiff Melville's boyfriend (Plaintiff Taylor) hated cops. Plaintiff Melville explained to him some history that might have explained Plaintiff Taylor's view of law enforcement and government.  (*Id.*)

At some point during Plaintiff Melville's conversation with Deputy Ramos, Deputy Mattos walked up to Plaintiff Melville at the pool with her handgun still in her hand but pointed downward, listening to Plaintiff Melville's explanation to Deputy Ramos' questions about Plaintiff Taylor. Deputy Mattos used profanity and asked, "What is this bullshit?"   (*Id.*at 11.) Plaintiff Melville believes this response was presumptively with reference to her explanation to Deputy Ramos about a prior contact Plaintiff Taylor had with law enforcement during the Butte fires.  Deputy Mattos responded, "I'm done with this shit." Deputy Mattos then started to walk away but then spotted Plaintiff Melville's lawful marijuana garden and stated, "Yeah, it figures." (*Id.*)  She then came back to Plaintiff Melville and said something further on the issue of why Plaintiff Taylor did not like the police.  Plaintiff Melville proceeded to explain to her the situation with Mr. Taylor's ex-wife, Brenda Johnson, a County employee.  Plaintiff Melville told her Ms. Johnson was cheating on Plaintiff Taylor with local law enforcement while he was in Iraq.[5] At

---

[5]  Defendants note that Plaintiff Taylor reportedly believed that his ex-wife, a former County employee, was unfaithful with County employees while he was overseas.  Plaintiff Taylor was ordered to surrender multiple weapons by Calaveras County Judge Hugh Swift due to a court-ordered restraining order stemming from allegations of Plaintiff Taylor stalking his ex-wife while at her county office and calling her names in a county parking lot.  (*See* Doc. No. 95 at 9.)

1   that point, Deputy Mattos stated, "Fuck you." (*Id.*) Plaintiff Melville replied in kind and said,

2   "Fuck you too." (*Id.*) Deputy Mattos turned around and walked away. Plaintiff Melville had no

3   conversation with Sergeant Stevens. (*Id.* at ¶ 14.)

4      Plaintiffs claim that at no time during the contact with the Deputy Defendants did Plaintiff

5   Taylor turn away from these deputies, walk towards his house or any other location, run towards

6   deputies, place himself between any bushes or trees, try to hide, or back away from the deputies.

7   ((Doc. 99-2, Taylor Decl. at ¶ 17; Doc. 99-3 Melville Decl. at ¶ 5.)

8            **B. Defendants' Version of Events[6]**

9      After their arrival between Plaintiffs' property and the Lopez property, and upon exiting

10  their vehicles, the Deputy Defendants observed Plaintiff Taylor from the public road. (DSSUF at

11  ¶¶ 10, 11.) There were no gates, barriers or fences between the public and private property at the

12  location of the incident. (Doc. No. 96, Ex. C, Taylor Depo. at 168:21-169:20.) Sergeant Stevens

13  communicated to Plaintiff Taylor that the deputies wanted to speak with him regarding reported

14  gunshots. (Doc. No. 97, Ex. J., Stevens Decl. at ¶ 10.) Plaintiff Taylor became irate and

15  belligerent with the Deputy Defendants. (DSSUF at ¶¶ 12-13.) Plaintiff Taylor was yelling

16  profanities at the Deputy Defendants and repeatedly told them "Fucking shoot me!" (JSUF at ¶

17  18; DSSUF at ¶ 13.) During this tirade, Plaintiff Taylor began to move to a location where the

18  Deputy Defendants could not see him. (DSSUF at ¶ 14.) The Deputy Defendants ordered

19  Plaintiff Taylor to stop multiple times, but Plaintiff Taylor did not obey the Deputy Defendants'

20  commands. (*Id.* at ¶¶ 14-15.) The Deputy Defendants ordered Plaintiff Taylor to turn around

21

22  [6] Unless otherwise noted, Defendants' version of events is derived primarily from their Separate
    Statement of Undisputed Facts ("DSSUF"), referenced above, in support of their motion for
23  summary judgment. (Doc. No. 94.) It is consistent with the version of events as set forth in their
    opposition to Plaintiffs' motion for partial summary judgment. (Doc. No. 100.)
24

25      As discussed above, following oral argument and as ordered by the Court, Plaintiffs filed
    a supplemental response to Defendants' Separate Statement of Undisputed Facts and Defendants
26  filed a reply. (Doc. Nos. 111, 113.) The Court has reviewed Plaintiffs' supplemental response
    and Defendants' reply, but in the interest of judicial economy, elects not to summarize the
27  additional evidence citations here. The parties' supplemental papers have not altered the Court's
    ultimate conclusion, and the material facts remain in dispute.
28

1    multiple times.  (Doc. No. 96, Ex. E, Stevens Depo. at 58:15-60:17.)  Plaintiff Taylor ignored

2    those commands.  (DSSUF at ¶¶ 14-15.)  The Deputy Defendants ordered Plaintiff Taylor to put

3    his hands behind his back multiple times.  (Doc. No. 96, Ex. E, Stevens Depo. at 58:15-60:17.)

4    Plaintiff Taylor ignored those commands.  (DSSUF at ¶¶ 14-15).  The Deputy Defendants entered

5    the property in order to keep Plaintiff Taylor in their view.  (DSSUF at ¶¶ 15-16.)  The Deputy

6    Defendants feared Plaintiff Taylor may be going for the reported weapon. (*Id.*)  They pointed

7    their weapons at Plaintiff Taylor and took him into custody.  (*Id.* at ¶¶ 18, 115; JSUF at ¶ 10.)

8    Plaintiff Taylor told the Deputy Defendants "Fuck you I am going to fuck you up."  (Doc. No. 96,

9    Ex. F, Mattos Depo. at 30:22-31:7.)  The duration of time from the Deputy Defendants' arrival

10    until Plaintiff Taylor was taken into custody was under two minutes.  (DSSUF at ¶ 37.)

11        The Deputy Defendants observed common symptoms of alcohol intoxication by Plaintiff

12    Taylor, including, but not limited to, red, watery eyes, unsteadiness on his feet and slurred speech.

13    (DSSUF at ¶ 73).  Plaintiff Taylor was arrested for interfering with the Deputy Defendants'

14    investigation.  (*Id.* at ¶ 74.)  He also was arrested for public intoxication.  (*Id.* at ¶ 75.) After

15    further investigation, a charge of unsafe discharge of a firearm also was included the Deputy

16    Defendants' report.  (*Id.* at ¶ 76.)

17        After Plaintiff Taylor was taken into custody, Sergeant Stevens approached Plaintiff

18    Melville who had been in the pool.  (*Id.* at ¶ 99.)  Plaintiff Melville informed Sergeant Stevens

19    that Plaintiff Taylor had not shot any weapon that day.  (*Id.* at ¶ 100.)  No Deputy Defendant

20    pointed their weapon at her.  (Doc. No. 96, Ex. E, Stevens Depo. at 57:15-17.)   Plaintiff Taylor

21    was subsequently booked at the Calaveras County Jail.  (Doc No. 100 at 10.)

22    **III.   LEGAL STANDARD**

23        Summary judgment is appropriate when the pleadings, disclosure materials, discovery,

24    and any affidavits provided establish that "there is no genuine dispute as to any material fact and

25    the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is

26    one that may affect the outcome of the case under the applicable law. *See Anderson v. Liberty*

27    *Lobby, Inc*., 477 U.S. 242, 248 (1986).  A dispute is genuine "if the evidence is such that a

28    reasonable [trier of fact] could return a verdict for the nonmoving party." *Id.*  Summary judgment

1    must be entered, "after adequate time for discovery and upon motion, against a party who fails to

2    make a showing sufficient to establish the existence of an element essential to that party's case,

3    and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S.

4    317, 322 (1986).

5          The party seeking summary judgment "always bears the initial responsibility of informing

6    the district court of the basis for its motion, and identifying those portions of the pleadings,

7    depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

8    which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S.

9    3 at 323.  The exact nature of this responsibility, however, varies depending on whether the issue

10    on which summary judgment is sought is one in which the movant or the nonmoving party carries

11    the ultimate burden of proof.  *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir.

12    2007). If the movant will have the burden of proof at trial, it must "affirmatively demonstrate that

13    no reasonable trier of fact could find other than for the moving party." *Id.* (citing *Celotex*, 477

14    U.S. at 323).  In contrast, if the nonmoving party will have the burden of proof at trial, "the

15    movant can prevail merely by pointing out that there is an absence of evidence to support the

16    nonmoving party's case." *Id.*

17          If the movant satisfies its initial burden, the nonmoving party must go beyond the

18    allegations in its pleadings to "show a genuine issue of material fact by presenting affirmative

19    evidence from which a jury could find in [its] favor." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th

20    Cir. 2009) (emphasis in original).  "[B]ald assertions or a mere scintilla of evidence" will not

21    suffice in this regard. *Id.* at 929; *see also Matsushita Electric Industrial Co. v. Zenith Radio*

22    *Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56[],

23    its opponent must do more than simply show that there is some metaphysical doubt as to the

24    material facts.") (citation omitted).  "Where the record taken as a whole could not lead a rational

25    trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita,*

26    475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289

27    (1968)).  Where, as here, the parties cross-move for summary judgment on a claim, the court is

28    required to review the evidence submitted by the parties in support of their own motions and in

1   opposition to the opposing party's motion in deciding each summary judgment motion.[7] *Fair*

2   *Hous. Council of Riverside Cty., Inc., v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001)

3   (finding district court was required to review the evidence properly submitted in support of

4   plaintiffs' motion for summary judgment to determine whether it presented a disputed issue of

5   material fact precluding summary judgment on defendants' motion for summary judgment);

6   *Poway Unified Sch. Dist.*, 658 F.3d 954, 960 (9th Cir. 2011) (stating court considers each party's

7   evidence on cross motions to evaluate whether summary judgment was appropriate).

8           In resolving a summary judgment motion, "the court does not make credibility

9   determinations or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984. Instead, "[t]he

10  evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn

11  in [its] favor." *Anderson*, 477 U.S. at 255. Inferences, however, are not drawn out of the air; the

12  nonmoving party must produce a factual predicate from which the inference may reasonably be

13  drawn. *See Richards v. Nielsen Freight Lines*, 602 F.Supp. 1224, 1244-45 (E.D. Cal. 1985),

14  aff'd, 810 F.2d 898 (9th Cir. 1987).

15  **IV.     EVIDENTIARY OBJECTIONS**

16          **A.  Objections to Plaintiffs' Evidence in Support of Motion for Partial Summary**

17              **Judgment (Doc. No. 102)**

18          Defendants submit 32 pages of objections to Plaintiffs' evidence submitted in support of

19  their motion for partial summary judgment. (Doc. No. 102.) Many of Defendants' objections to

20  Plaintiffs' evidence are based on lack of foundation, lack of proper authentication, or hearsay.

21  These evidentiary objections are overruled for the purposes of this motion. *See Burch v. Regents*

22  *of Univ. of California*, 433 F. Supp. 2d 1110, 1120 (E.D. Cal. 2006) ("When evidence is not

23  presented in an admissible form in the context of a motion for summary judgment, but it may be

24  presented in an admissible form at trial, a court may still consider that evidence." (citation

25  omitted)); *see also City of Lincoln v. United States*, No. 2:16-CV-1164-KJM-AC, 2020 WL

26  ───────────────

27  [7]  In light of the Court's obligation to review all of the submitted evidence, Defendants'
    contention that they are entitled to summary judgment because Plaintiffs failed to provide a direct
    response to Defendants' statement of undisputed facts as required by the Local Rules is not

28  persuasive. (*See* Doc. No. 105 at 5-6.)

1    5107613, at *5 (E.D. Cal. Aug. 31, 2020) (citing *Burch* and overruling objections based on lack

2    of foundation for purposes of summary judgment motion); *Roxana Towry Russell v. Walmart Inc.*

3    *et al.*, No. CV 19-5495-MWF (JCX), 2020 WL 5289889, at *4 (C.D. Cal. Aug. 17, 2020) (citing

4    *Burch* and overruling "garden variety evidentiary objections" based on lack of foundation, lack

5    proper authentication and hearsay; noting that while such objections may be cognizable at trial,

6    on a motion for summary judgment, the court is concerned only with the admissibility of the

7    relevant facts at trial, and not the form of the facts as presented in the motion for summary

8    judgment).  Defendants also object that certain evidence is irrelevant, speculative or immaterial to

9    the issues in this case.  These objections also are overruled because they bear on the sufficiency

10   of Plaintiffs' evidence rather than its admissibility.   *See Burch*, 433 F. Supp.2d at 1119; *see also*

11   *Huber* v. Coulter, No. CV 12-3293-GHK (JEM), 2015 WL 13173223, at *3 (C.D. Cal. Feb. 10,

12   2015), aff'd, 684 Fed.App'x 623 (9th Cir. 2017) (acknowledging that a court cannot rely on

13   irrelevant facts to find that there is no genuine dispute of material fact and that relevance

14   objections are redundant).

15          Defendants also object that a statement in Plaintiff Taylor's declaration in support of the

16   motion for partial summary judgment contradicts his deposition testimony.  (Doc. No. 102 at 7,

17   Objection No. 6.)  A party cannot create a genuine issue of material fact by contradicting his own

18   previous sworn statement without explaining the contradiction. *See Cleveland v. Policy*

19   *Management Systems Corp.*, 526 U.S. 795, 806 (1999). However, this rule does not apply in

20   every case in which a declaration contradicts prior deposition testimony. Rather, it is concerned

21   with sham testimony that flatly contradicts earlier testimony in an attempt to create a factual

22   dispute and avoid summary judgment. *Kennedy v. Allied Mutual Ins. Co.,* 952 F.2d 262, 266–67

23   (9th Cir. 1991). At issue is Plaintiff Taylor's declaration that his residence is 8630 Cave City Rd.,

24   Mountain Ranch, California, and the property consisted of 2 lots, each of which was

25   approximately 2.7 acres.  Defendants contend that this testimony flatly contradicts statements that

26   Plaintiff Taylor made during his deposition; that is, Plaintiff Taylor reportedly testified that he

27   resides at 8630 Cave City Road and that 8606 Cave City Road is an empty lot adjacent thereto.

28   (Doc. No. 102 at 7.)  Plaintiffs respond that the testimony is accurate in that Plaintiff Taylor's

rental property consisted of two lots, each of which was approximately 2.7 acres.  (Doc. No. 104-1 at 7.)  The Court concludes that any discrepancies result from Plaintiffs' description of the boundaries of the rental property rather than intentionally creating an issue of fact as to whether there are multiple lots.  Defendants' evidentiary objection is overruled.

Defendants additionally object that portions of Plaintiff Melville's declaration in support of the motion for partial summary judgment contradicts earlier testimony and is "sham testimony."  (Doc. No. 102 at 26, Objection No. 18.)  At issue is Plaintiff Melville's declaration that she was present at the incident at approximately 8:15 p.m. Defendants assert that this contradicts her deposition testimony that the incident occurred at 6:00 p.m.  (*Id.*)  The statement at issue concerns a relatively minor factual discrepancy and Defendants' objection is overruled. *Huber*, 2015 WL 13173223, at *3 (overruling "sham testimony" objection where statements at issue concerned relatively minor factual discrepancies).

**B.  Objections to Plaintiffs' Evidence in Opposition to Defendants' Motion for Summary Judgment (Doc. No. 105-1)**

Defendants forward objections to Plaintiffs' declarations submitted in support of their opposition to Defendants' motion for summary judgment.  (Doc. No. 105-1 at 2-7.)  Insofar as those objections are based on lack of foundation and lack of authentication, the objections are overruled for purposes of the cross-motions for summary judgment.  *Burch*, 433 F. Supp. 2d t 1120; *Russell*, 2020 WL 5289889, at *4.  Defendants additional objections that certain evidence is irrelevant, speculative or immaterial also are overruled.  *See Burch,* 433 F. Supp.2d at 1119.

Defendants also object that statements in the declarations of Plaintiffs Taylor and Melville contradict their sworn deposition testimony.  As with prior objections, these objections predominately concern Plaintiff Taylor's declaration that his residence is 8630 Cave City Rd., Mountain Ranch, California, and the property at issue consisted of 2 lots, each of which was approximately 2.7 acres.  (Doc. No. 105-1 at 2, 4, 6, Objection Nos. 1, 3, 5.)  Defendants challenge Plaintiffs' statements regarding the scope of his property, noting that there are two distinct lots:  8360 Cave City Road and 8606 Cave City Road.  (*Id.* at 4.)   Any discrepancies in testimony result from Plaintiffs' description of the boundaries of property rented by Plaintiffs

14

1    rather than intentionally creating an issue of fact as to whether there are multiple lots with distinct

2    addresses.  Defendants' evidentiary objections are overruled.

3    **V.      PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE**

4         Plaintiffs request that the Court take judicial notice of the following documents in support

5    of their Motion for Partial Summary Judgment:  (1) Exhibit 11: Calaveras County Ordinance No.

6    887; (2) Exhibit 12: Calaveras County Ordinance No. 9.12.030; (3) Exhibit 20: Defendants'

7    Answer to Complaint (Doc. No. 23); and (4) Exhibit 35: Plaintiffs' Complaint (Doc. No. 1).

8         Plaintiffs' request for judicial notice of the complaint and answer is GRANTED. A court

9    may properly take judicial notice of its own records. *See United States v. Wilson*, 631 F.2d 118,

10   119 (9th Cir. 1980) (court may take judicial notice of its own records and the records in other

11   cases).   Plaintiffs' request for judicial notice of Calaveras County Ordinances Nos. 9.12.030 and

12   887 is DENIED.  The Court has not relied on these ordinances in reaching its determination on

13   the cross-motions for summary judgment.

14   **VI.      DISCUSSION**

15   **A. Section 1983 Claims against Deputy Defendants**

16        Plaintiffs plead three Section 1983 claims against the Deputy Defendants predicated on a

17   violation of their rights under the Fourth and Fourteenth Amendments: (1) warrantless entry, (2)

18   unlawful arrest, and (3) excessive force.  Plaintiff Taylor also pleads two Section 1983 claims

19   against the Deputy Defendants predicated on an assertion of fabricated evidence in violation of

20   the Fourth and Fourteenth Amendments and retaliation in violation of the First and Fourteenth

21   Amendments.  Plaintiff Taylor does not move for summary judgment on the fabricated evidence

22   claim.

23   **1.  Warrantless Entry Claim**

24        Plaintiffs contend that the Deputy Defendants' entry into Plaintiffs' backyard and

25   curtilage of the home violated the Fourth Amendment because the Deputy Defendants did not

26   have a warrant, there was no consent to enter, and no emergency or exigency exception applied.

27   Deputy Defendants counter that Plaintiffs did not have an expectation of privacy on the entered

28   property, exigent circumstances and the caretaker exception applied to their entry on the property,

1    and they are entitled to qualified immunity.

2         The Fourth Amendment provides that "[t]he right of the people to be secure in their

3    persons, homes, papers, and effects, against unreasonable searches and seizures, shall not be

4    violated . . .."  U.S. Const. amend. IV.  This protection against warrantless searches and seizures

5    extends to the curtilage around one's home that, like the inside of a house, "harbors the intimate

6    activity associated with the sanctity of a [person's] home and the privacies of life." *United States*

7    *v. Dunn*, 480 U.S. 294, 300 (1987) (internal quotation marks omitted).  "Like searches and

8    seizures inside the home itself, searches and seizures in the curtilage without a warrant are also

9    presumptively unreasonable." *United States v. Lundin*, 817 F.3d 1151, 1158 (9th Cir. 2016)

10   (citation and internal quotation omitted).  "The presumption against warrantless searches and

11   seizures would be of little practical value if the State's agents could stand in a home's porch or

12   side garden and trawl for evidence with impunity." *Id.*  (citation and quotation omitted).  "A

13   government agent conducts a 'search' within the meaning of the Fourth Amendment when the

14   agent infringes an expectation of privacy that society is prepared to consider reasonable or

15   physically occupie[s] private property for the purpose of obtaining information." *Id.* (internal

16   citations and quotations omitted).

17        Defendants claim that Plaintiffs are not entitled to summary judgment because they had no

18   expectation of privacy upon initial contact because the Deputy Defendants parked near the empty

19   lot, spotted Plaintiff Taylor from the driveway and asked to speak with him.  (Doc. No. 100 at

20   14.)  However, as noted above, there is a dispute of fact as to whether the Deputy Defendants

21   initially confronted Plaintiff Taylor from an "empty lot," on Plaintiffs' curtilage, or from the

22   public roadway.

23        There also is a dispute of fact as to the parameters of any curtilage to Plaintiffs' home.  In

24   determining whether an outside area constitutes curtilage falling within the protection of the

25   Fourth Amendment, courts consider "the proximity of the area claimed to be curtilage to the

26   home, whether the area is included in an enclosure surrounding the home, the nature of the uses to

27   which the area is put, [and] the steps taken by the resident to protect the area from observation by

28   people passing by." *Dunn*, 480 U.S. at 301.  The evidence demonstrates that there are three

parcels of land involved in this incident:  the Lopez residence at 8570 Cave City Road, the Taylor residence at 8360 Cave City Road, and the empty lot in between the two at 8606 Cave City Road. It is Defendants' position that the majority of interactions occurred on the empty lot.  Although Defendants appear to concede that Plaintiff Taylor allegedly had a right to use the empty lot, they claim it is not curtilage because there is no evidence as to either the purpose for which the property was used or what Plaintiff Taylor's permission to use the property entailed.   (Doc. No.100 at 15.)  Plaintiffs have cited counter evidence that they occupied both parcels of land-- their residence and the so-called empty lot--with variously placed items of personal property. (Doc. No. 104 at 7; Doc. No. 103-1 at 205, Halterman Decl. at Ex. A (depicting parcels of property with Plaintiffs' personal property).  Plaintiffs reportedly stored a boat, a propane tank, a fifth wheel camper, recreational vehicles, a 4-wheel ATF, tractor, motorcycles, dirt bikes, and automobiles, as well as a storage shed with various tools. There was planting, a seating area, and a portable swimming pool placed in their backyard. (Doc. No. 85-1 at 25; Doc. No. 91, Taylor Declaration, Exs. H, J and K; Doc. No. 92, Melville Declaration, Ex. A).  Plaintiffs also present evidence to argue that that the backyard area (and presumably including the empty lot) is immediately adjacent to the home, the geography and growth surrounding the backyard preclude visual observation from the public street and provide a natural barrier for privacy, and there were no trespassing signs posted.  (Doc. No 85-1 at 25.)

Notwithstanding the above, there is no dispute that the Deputy Defendants ultimately entered Plaintiffs' property without a warrant and arrested Plaintiff Taylor.  (Doc. No. 100 at 15-16, n. 4; JSUF 8-9.)  Defendants contend that exceptions to the warrant requirement existed when they took Plaintiff Taylor into custody: (1) exigent circumstances; and (2) the emergency caretaker exception.   (Doc. No. 95 at 14-17; Doc. No. 100 at 15-19.)  As Defendants suggest, the Ninth Circuit recognizes exceptions to the warrant requirement before searching a home or its curtilage, including exigent circumstances and emergency exceptions. *Hopkins v. Bonvicino*, 573 F.3d 752,763 (9th Cir. 2009); *Kovacic v. County of Los Angeles*, 2016 WL 112558, at *8 (C.D. Cal. Mar. 21, 2016).  "These exceptions are 'narrow' and their boundaries are 'rigorously guarded' to prevent any expansion that would unduly interfere with the sanctity of the home."

1   *Hopkins*, 573 F.3d at 763 (citation omitted).  The exigency exception allows officers "to enter a

2   home without a warrant if they have both probable cause to believe that a crime has been or is

3   being committed and a reasonable belief that their entry 'is necessary to prevent ... the destruction

4   of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating

5   legitimate law enforcement efforts.'"  *Id.* (citation omitted).  The emergency exception stems

6   from the officers' community caretaking function and allows them to respond to emergency

7   situations that threaten life or limb.  It does not derive from police officers' function as criminal

8   investigators.  *Id.*

9        The only evidence of a potential crime that the Deputy Defendants had prior to arriving at

10   the property was a report of shots being fired near the Lopez residence.  Generally, the report of

11   gunshots "at or near [the] residence" does not itself provide probable cause. *Lemus v. Cty. of*

12   *Merced*, 711 F. App'x 859, 861 (9th Cir. 2017).  Thereafter, upon arrival, it is undisputed that the

13   no gunshots were heard by the Deputy Defendants and, at the time of contact with the Deputy

14   Defendants, Plaintiff Taylor was dressed in swim trunks and a tank top and displayed no weapon.

15   This evidence does not establish that the Deputy Defendants could have had probable cause to

16   believe that a crime had been or was being committed or an objectively reasonable belief that a

17   life-threatening emergency was occurring upon their initial arrival.

18        Deputy Defendants contend, however, that Plaintiff Taylor was belligerent and moved

19   toward a location where the Deputy Defendants could not see him and that they only entered the

20   property after they reasonably believed Plaintiff Taylor potentially was going for the reported

21   weapon.  (Doc. No. 95 at 16.)  They also stepped onto the property to ensure that there was no

22   longer a threat to the public from an active shooter.  (*Id.* at 17.)  There are genuine disputes of fact

23   as to the events involved in this incident, including at what point the Deputy Defendants entered

24   the property, and Plaintiff Taylor's behavior and actions after being contacted by the Deputy

25   Defendants, including whether he moved to any location where the Deputy Defendants could not

26   see him.   Because there are genuine disputes of fact, the Court cannot conclude that there is any

27   recognized exception to the warrant requirement.

28   ///

1

2      The Deputy Defendants also contend that they are entitled qualified immunity for the

3 entry and arrest because they had a reasonable fear of imminent harm to themselves or others, and

4 the totality of the circumstances authorized their warrantless entry to avoid potential harm.  The

5 doctrine of qualified immunity shields individual officers "from liability for civil damages insofar

6 as their conduct [did] not violate clearly established ... constitutional rights of which a reasonable

7 person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v.*

8 *Fitzgerald*, 457 U.S. 800, 818 (1982)). The court applies a two-prong analysis in qualified

9 immunity cases, "under which summary judgment is improper if, resolving all disputes of fact

10 and credibility in favor of the party asserting the injury, (1) the facts adduced show that the

11 officer's conduct violated a constitutional right, and (2) that right was 'clearly established' at the

12 time of the violation." *Kirkpatrick v. Cty. of Washoe*, 843 F.3d 784, 788 (9th Cir. 2016) (en

13 banc).

14      Here, there are genuine issues of fact regarding whether the Deputy Defendants violated

15 Plaintiffs' Fourth Amendments rights.  Those unresolved issues of fact are also material to a

16 proper determination of the reasonableness of the officers' belief in the legality of their actions.

17 *See Espinosa v. City & Cty. of S.F.*, 598 F.3d 528, 532 (9th Cir. 2010) (affirming a denial of

18 summary judgment on qualified immunity grounds because "there are genuine issues of fact

19 regarding whether the officers violated [the plaintiff's] [constitutional] rights" that were "also

20 material to a proper determination of the reasonableness of the officers' belief in the legality of

21 their actions"); *Santos v. Gates*, 287 F.3d 846, 855 n. 12 (9th Cir.2002) (declining to decide the

22 qualified immunity issue "because whether the officers may be said to have made a 'reasonable

23 mistake' of fact or law may depend on the jury's resolution of disputed facts and the inferences it

24 draws therefrom"); *see also Shay v. Cty. of Los Angeles*, No. 2:15-CV-04607-CAS (RAOx), 2019

25 WL 4598238, at *8 (C.D. Cal. Sept. 23, 2019) (denying qualified immunity because there were

26 genuine disputes of material facts that precluded the court from determining whether the officer

27 could reasonably believe his conduct was lawful or in violation of clearly established law).

28 Because there are genuine disputes of material facts that preclude a determination as to whether

1  the Deputy Defendants could believe their conduct was lawful or in violation of clearly

2  established law, the Court denies Defendants' summary judgment motion with respect to

3  qualified immunity on Plaintiffs' Fourth Amendment unlawful entry claims.

4  **2.  Unlawful Arrest Claim**

5      "A claim for unlawful arrest is cognizable under [42 U.S.C.] § 1983 as a violation of the

6  Fourth Amendment, provided the arrest was without probable cause or other justification."

7  *Dubner v. City and Cty of San Francisco*, 266 F.3d 959, 964 (9th Cir. 2001). "Probable cause

8  exists when, under the totality of the circumstances known to the arresting officers (or within the

9  knowledge of the other officers at the scene), a prudent person would believe the suspect had

10  committed a crime." *Id.* at 966. In the context of an unlawful arrest, "the two prongs of the

11  qualified immunity analysis can be summarized as: (1) whether there was probable cause for the

12  arrest; and (2) whether it is *reasonably arguable* that there was probable cause for arrest–that is,

13  whether reasonable officers could disagree as to the legality of the arrest such that the arresting

14  officer is entitled to qualified immunity." *Rosenbaum v. Washoe Cty.*, 663 F.3d 1071, 1076 (9th

15  Cir. 2011) (per curiam).

16      Plaintiff Taylor was arrested for interfering with the Deputy Defendants' investigation, a

17  violation of California Penal Code § 148(a)(1).[8]  An arrest under § 148(a)(1) requires probable

18  cause to believe the following: (1) the defendant willfully resisted, delayed, or obstructed a peace

19  officer; (2) when the officer was engaged in the performance of his or her duties; and (3) the

20  defendant knew or reasonably should have known the other person was a peace officer engaged in

21  his or her duties. *In re Muhammed C.*, 95 Cal.App.4th 1325, 1329 (2002). "In California, the

22  lawfulness of the officer's conduct is an essential element of the offense of resisting, delaying, or

23  obstructing a peace officer." *Smith v. Cty of Hemet*, 394 F.3d 689, 695 (9th Cir. 2005) (en banc)

24  (emphasis in original). It is not a crime to resist unlawful orders. *Id.*

25      The facts surrounding the probable cause determination are in dispute with Plaintiffs

26

27  [8]  Plaintiff Taylor also was arrested for public intoxication, a violation of California Penal Code §

28  647(f).  Defendants do not appear to dispute that Plaintiff Taylor was not in a public place when
   he was arrested, suggesting there was no probable cause for such an arrest.

1   claiming that Plaintiff Taylor obeyed all commands, displayed his hands at all times and never

2   walked away from the deputies, and Deputy Defendants claiming that Plaintiff Taylor repeatedly

3   failed to obey commands and moved toward a location where the Deputy Defendants could not

4   see him.  Deputy Defendants also suggest that probable cause is supported by Plaintiff Taylor's

5   belligerent behavior, which is undisputed by the parties, and his failure to comply with the

6   Deputy Defendants' orders.  Plaintiff Taylor argues that his actions did not extend beyond verbal

7   criticism and he did not engage in obstructive conduct.  Plaintiff Taylor's use of vulgar language,

8   without more, is not a valid reason to arrest him.  Under California law, the fact that someone

9   verbally challenges a police officer's authority or is slow to comply with orders does not mean

10  that they have delayed an investigation. *People v. Quiroga*, 16 Cal.App.4th 961, 966, 20

11  Cal.Rptr.2d 446 (1993) (holding that the Penal Code does not "criminalize[ ] a person's failure to

12  respond with alacrity to police orders."). "Vulgar, profane or highly inappropriate words alone do

13  not support a finding that the speech was criminal." *Arias v. Amador*, 61 F. Supp. 3d 960, 971–

14  72 (E.D. Cal. 2014) (citation omitted).

15      There are genuine issues of material fact as to whether the Deputy Defendants had

16  probable cause to arrest Plaintiff Taylor for a violation of Penal Code section 148(a)(1).   This

17  same material dispute of fact precludes a finding of qualified immunity.

18                    **3.  Excessive Force**

19      Defendants seek summary judgment on Plaintiffs' claims of excessive force.  The Fourth

20  Amendment permits law enforcement to use objectively reasonable force. *Graham v. Connor*,

21  490 U.S. 386, 396–97 (1989). Such an inquiry requires the Court to "consider the totality of the

22  circumstances." *Gonzalez v. City of Anaheim*, 747 F.3d 789, 794 (9th Cir. 2014) (en banc)

23  (citation omitted). "Factors for evaluating reasonableness include, but are not limited to: (1) the

24  severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of

25  the officers or others; and (3) whether the suspect actively resisted arrest or attempted to escape."

26  *S.B. v. County of San Diego*, 864 F.3d 1010, 1013 (9th Cir. 2017) (citing *Graham*, 490 U.S. at

27  396). "Other relevant factors include the availability of less intrusive alternatives to the force

28  employed, whether proper warnings were given and whether it should have been apparent to

1    officers that the person they used force against was emotionally disturbed." *Id.* (quoting *Glenn v.*

2    *Washington County*, 673 F.3d 864, 872 (9th Cir. 2011)). "Of all these factors, the 'most

3    important' one is 'whether the suspect posed an immediate threat to the safety of the officers or

4    others.'" *Id.* (quoting *George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013)).

5           Defendants argue that only minimal force was used to effectuate the arrest, consisting of

6    verbal commands, pointing weapons and handcuffs.  (Doc. No. 95 at 19.)  With respect to

7    Plaintiff Taylor, the Deputy Defendants suggest that Plaintiff's allegations of overly tight

8    handcuffs do not support a claim for excessive force because the use of handcuffs was neither

9    excessive nor unreasonable.  The Ninth Circuit has long recognized that overly tight handcuffing

10   may constitute excessive force. *See, e.g., Thompson v. Lake*, 607 Fed.App'x 624, 625-26 (9th Cir.

11   2015); *Wall v. County of Orange*, 364 F.3d 1107, 1112 (9th Cir. 2004); *LaLonde v. County of*

12   *Riverside*, 204 F.3d 947, 960 (9th Cir. 2000). Although the level at which tight handcuffing

13   becomes unconstitutional is not well defined, the Ninth Circuit has found a triable issue when the

14   handcuffs caused demonstrable injury or unnecessary pain, or when officers ignored or refused

15   requests to loosen the handcuffs once alerted that the handcuffs were too tight. *See Thompson*,

16   607 F. App'x at 625-26 (denying qualified immunity when tight handcuffs caused plaintiff

17   unnecessary pain and he requested police to loosen them); *Meredith v. Erath,* 342 F.3d 1057,

18   1063 (9th Cir. 2003) (denying qualified immunity when plaintiff was kept for 30 minutes in

19   overly tight handcuffs causing her unnecessary pain);  *see also Smith v. Sergent*, No. 2:15-cv-

20   0979 GEB DB P, 2017 WL 4284659, at *6 (E.D. Cal. Sept. 27, 2017) ("most courts in this circuit

21   have held that a plaintiff attempting to prove excessive force must show either a demonstrable

22   injury or that he complained about the handcuffs being too tight and was ignored"; collecting

23   cases).

24          To raise a genuine dispute, Plaintiff Taylor has admitted that he cannot recall if he initially

25   complained about the overly tight handcuffs to the deputies but that he "might have said

26   something about them being on too tight" on the drive in the patrol vehicle to jail after he had

27   been told that he was arrested for resisting arrest. (Doc. No. 99-2, Taylor Decl. at ¶ 16.)

28   However, he has submitted evidence of the in the form of a picture allegedly showing the imprint

1   of the handcuffs on his wrist after his release from jail. (*Id.* at Ex. B.)

2          The Deputy Defendants also suggest that pointing a gun at Plaintiff Taylor cannot support

3   a Fourth Amendment claim because it was not excessive.  The Ninth Circuit has ruled that the

4   pointing of a gun at someone may constitute excessive force, even if it does not cause physical

5   injury to the contrary under certain circumstances. *Tekle v. United States*, 511 F.3d 839, 845 (9th

6   Cir.2007); *Robinson v. Solano County*, 278 F.3d 1007, 1014–15 (9th Cir.2002) (holding that the

7   officers' use of a drawn gun at close range when they pointed the gun at the head of an unarmed

8   misdemeanor suspect is actionable) (en banc); *Baldwin v. Placer Cty.*, 418 F.3d 966, 970 (9th Cir.

9   2005) (pointing weapons and pushing plaintiff could constitute excessive force),

10          In considering the totality of circumstances involving the use of force against Plaintiff

11   Taylor, the Court finds that a genuine dispute of material fact exists at least as to the second, third

12   and fourth of the reasonableness factors: (1) whether Plaintiff Taylor posed an immediate threat

13   to the safety of officers or others; (2) whether Plaintiff Taylor actively resisted arrest or attempted

14   to escape; and (3) whether proper warnings were given.  Viewing the evidence in the light most

15   favorable to the Plaintiffs, a reasonable jury could find the amount of force use against Plaintiff

16   Taylor was excessive.

17          As to Plaintiff Melville, her claims of excessive force stem only from allegations that the

18   Deputy Defendants pointed their weapons at her.  Again, the pointing of a gun at someone may

19   constitute excessive force, even if it does not cause physical injury to the contrary under certain

20   circumstances. *Tekle*, 511 F.3d at 845 (9th Cir.2007).  Here, the Deputy Defendants contend that

21   they did not use any force against Plaintiff Melville and at no point did the Deputy Defendants

22   point a gun at her.  (Doc. No. 95 at 13).  Despite the Deputy Defendants' claim that they did not

23   point their weapons at her, Plaintiff Melville has submitted evidence that the Deputy Defendants

24   came into the yard with their guns drawn and pointed at her and Plaintiff Taylor.  (Doc. No. 99-3

25   at ¶ 4.)  There is no evidence that Plaintiff Melville was a suspect, posed any threat to the Deputy

26   Defendants, or failed to comply with any orders.  Taking the evidence in the light most favorable

27   to Plaintiff, a jury could find that it was unreasonable to threaten Plaintiff Melville with a lethal

28   weapon pointed at her. Further, a jury could find the Deputy Defendants' use of the threat of

1    lethal force unreasonable because Plaintiff Melville neither posed a credible immediate threat to

2    the officers, nor did she try to resist or flee from arrest.  Accordingly, summary judgment on

3    Plaintiff Melville's excessive force claim is not warranted.

4           The Deputy Defendants claim that they are entitled to qualified immunity on Plaintiffs'

5    claims of excessive force.  The Court has found that material issues of fact exist with respect to

6    the reasonableness of the Deputy Defendants' use of force. The Court recognizes that the

7    presence of disputed facts, alone, does not provide a sufficient basis for denying summary

8    judgment on the issue of qualified immunity. *See Saucier v. Katz*, 533 U.S. 194, 200 (2001).

9    However, "unresolved issues of fact are also material to a proper determination of the

10   reasonableness of the officers' belief in the legality of their actions." *Espinosa*, 598 F.3d at 532.

11   The Fourth Amendment right to be free from unreasonable seizure and the use of excessive force

12   is well defined. And, the Ninth Circuit has held that pointing a loaded weapon at a suspect can

13   constitute excessive force when the suspect presents little risk. *See, e.g., Espinosa*, 598 F.3d at

14   537–38 (holding defendants failed to show that there were no issues of material fact concerning

15   the reasonableness of their actions when they entered with drawn weapons where the threat level

16   was low). Moreover, the contours of the right have been clearly established in the Ninth Circuit

17   since at least 2002. *See Robinson*, 278 F.3d at 1015. Similarly, when these events occurred in

18   2017, it was clearly established that overly tight handcuffs constituted excessive force. *See Wall*,

19   364 F.3d at 1112 ("It is well-established that overly tight handcuffing can constitute excessive

20   force."); *LaLonde*, 204 F.3d at 960 ("A series of Ninth Circuit cases has held that tight

21   handcuffing can constitute excessive force.").  Because the determination of qualified immunity

22   requires an inquiry into whether reasonable officers could have believed their conduct lawful

23   under the particular circumstances, the Court cannot resolve the legal question of qualified

24   immunity until after the jury resolves the factual issues surrounding the Deputy Defendants' use

25   of force against the Plaintiffs. *See Romero v. Kitsap County*, 931 F.2d 624, 627-28 (9th Cir.1991).

26                              **4.  Fabricated Evidence**

27          Defendants seek summary judgment on Plaintiff Taylor's claim of deliberately fabricated

28   evidence in violation of his Fourth and Fourteenth Amendment rights.  At the hearing, the parties

1    stipulated to dismissal of this claim.

2    ### 5.  First Amendment Retaliation

3           Although the briefing is not entirely clear, Plaintiff Taylor appears to allege that the

4    Deputy Defendants knew that he was designated as a two-deputy response in reaction to his prior

5    exercise of his First Amendment rights and that they arrested him in order to retaliate against his

6    prior complaints.  (Doc. No. 85-1.)

7            "Official reprisal for protected speech 'offends the Constitution [because] it threatens to

8    inhibit exercise of the protected right[';] ... the First Amendment prohibits government officials

9    from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking

10   out." *Lacey v. Maricopa Cty.*, 693 F.3d 896, 916–19 (9th Cir. 2012) (alterations in original)

11   (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)).

12          In *Nieves v. Bartlett*, the Supreme Court held that a plaintiff pursuing a First Amendment

13   retaliatory arrest claim must generally plead and prove the absence of probable cause for the

14   arrest. ⸺ U.S. ⸺, 139 S. Ct. 1715, 1724, 204 L.Ed.2d 1 (2019) (abrogating *Ford v. Yakima*,

15   706 F.3d 1188 (9th Cir. 2013) (per curiam)). The *Nieves* court noted, however, "[a]lthough

16   probable cause should generally defeat a retaliatory arrest claim, a narrow qualification is

17   warranted for circumstances where officers have probable cause to make arrests, but typically

18   exercise their discretion not to do so." *Id.* at 1727. Thus, "the no-probable-cause requirement

19   should not apply when a plaintiff presents objective evidence that he was arrested when otherwise

20   similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.*

21          Plaintiff Taylor attempts to present evidence that he was arrested when otherwise

22   similarly situated individuals had not been arrested by contending that Sergeant Stevens' material

23   testimony is that, in all of his prior contacts in his 12-year employment with the County with

24   these "very common" calls of shots fired very close to a residence on a weekly basis, he has never

25   arrested anyone.  (Doc. No. 85 at 38.)  However, Plaintiff Taylor was arrested for interfering with

26   the Deputy Defendants' investigation and public intoxication.  He has not presented objective

27   evidence that he was arrested when otherwise similarly situated individuals not engaged in the

28   same sort of protected speech had not been. In other words, Plaintiff Taylor has not presented

                                                25

sufficient facts that individuals who had not critiqued the County were allowed to interfere with investigations without being arrested.  Here, there is a question of fact as to whether the Deputy Defendants had probable cause to arrest Plaintiff Taylor for interference with officers.

### B.  *Monell* Claims Against County

A municipality, such as Defendant County, cannot be held liable under section 1983 for the acts of its employees under the theory of respondeat superior. *Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997); *Monell v. Dept. of Social Servs. of City of New York*, 436 U.S. 658, 691 (1978). A *Monell* claim of municipal liability may involve: (1) implementation of official policies or established customs that inflict constitutional injury; (2) acts of omission amounting to a policy, custom, or practice of "deliberate indifference" to constitutional rights; or (3) ratification of a subordinate's unconstitutional conduct by a local government official with final policy-making authority. *Clouthier v. Cty. of Contra Costa*, 591 F.3d 1232, 1249-50 (9th Cir. 2010), overruled in part on other grounds in *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016).

Plaintiffs contend that they are entitled to summary judgment based on the County's purported custom and practice in failing to first investigate the underlying report of shots being fired with the reporting party.  In short, Plaintiffs claim that Deputy Defendants should have re-contacted Mr. and Mrs. Lopez after their call to the Calaveras County Sheriff and before proceeding to the purported scene of the incident and initiating contact with Plaintiff Taylor. (Doc. No. 85-1 at 44; Doc. No. 99 at 22.)  Plaintiffs support their argument, in part, with reference to Calaveras County Sheriff's Office Policy 600.4.2(a)-(c), which requires that a deputy conducting an initial investigation of whether or not a crime has been committed, complete at a minimum: "(1) An initial statement from any witnesses or complainants. 2. A cursory examination for evidence."  (PSSUD at ¶ 95 [Doc. No. 87]; Doc. No, 89-1, Ex. 25 to Panos Decl.)

At oral argument, the Court requested that Plaintiffs clarify the *Monell* claim.  In response, Plaintiffs stated that they contend there is a custom and practice of ignoring the written policy (Calaveras County Sheriff's Office Policy 600.4.2(a)-(c)) to investigate a complaint and a *de facto* policy of not investigating complaints.  Plaintiffs contend that a *de facto* policy exists of **not** contacting the complaining witness.  (See (PSSUD at ¶ 102 [Doc. No. 87] "none of the

1  defendants contacted Lopez prior to making contact with Taylor because it was common

2  procedure on a shot fired call.") and (PSSUD at ¶ 103 [Doc. No. 87] "The practice was not to talk

3  to the caller before clearing the scene.").) Plaintiffs essentially contend that Deputy Defendants'

4  practice or custom of first responding to the scene without re-contacting the witness complaining

5  of shots-fired violates County policy and inflicts a constitutional injury.  Plaintiffs contend that

6  the Defendant Calaveras' *de facto* policy of officers ignoring the written departmental

7  investigation policy, in violation of Office Policy 600.4.2(a)-(c), and coming to talk to Plaintiff

8  Taylor, without first going to the complaining party, Mr. and Mrs. Lopez, to investigate is an

9  unconstitutional custom and practice.

10         In support of their position, Plaintiffs rely on *United States v. Struckman*, 603 F.3d 731

11  (9th Cir. 2010) ("*Struckman*") and similar cases. In *Struckman,* the Ninth Circuit dealt with what

12  is a sufficient investigation to provide probable cause for arrest; that is, what investigation must

13  take place for probable cause to be established for arrest. In *Struckman*, three police officers,

14  having no warrant, entered the fenced backyard of the arrestee's home. At the time, the only

15  information the officers had was that a neighbor called and reported the homeowners were at

16  work and a white male wearing a black jacket had thrown a red backpack over the fence and

17  climbed into the backyard. After the officers arrived at the scene, they peered over and through

18  the six-foot tall fence and saw a red backpack lying against the back porch and the arrestee,

19  Struckman, wearing a black leather jacket, walking around. They saw no signs of forced entry

20  into the house.  Immediately after first making eye contact with Struckman, an officer drew his

21  firearm and ordered Struckman to get on the ground, and the officers surged into the backyard,

22  with one officer climbing over the fence and another kicking open the padlocked gate.

23         The officers arrested Struckman for burglary in the first degree.  The Ninth Circuit held

24  that police officers' warrantless seizure of Struckman within his backyard and their entry into the

25  yard to perfect his arrest, violated the Fourth Amendment.  In holding there was not probable

26  cause, the *Struckman* court offered the quotation on which Plaintiffs here rely, that "officers may

27  not solely rely on the claim of a citizen witness ..., but must independently investigate the basis of

28  the witness's knowledge or interview other witnesses." *Id*. at 742 (quoting  *Arpin v. Santa Clara*

1    *Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001)). Similarly, in *Arpin*, a motion to

2    dismiss case, the complaint alleged that the arresting officer refused to identify himself, would

3    not inform the plaintiff of the reason she was being arrested, and did not allow the plaintiff to

4    explain her side of the story prior to arresting her. *Id.* The Ninth Circuit held that the allegations

5    of the complaint raised an inference that the officers arrested the plaintiff based on an accuser's

6    unexamined charge, and if they did not independently investigate the accuser's battery claim, they

7    did not have probable cause to arrest the plaintiff.  *Arpin*, 261 F.3d at 925 (officers may not solely

8    rely on the claim of a citizen witness ..., but must independently investigate the basis of the

9    witness' knowledge or interview other witnesses."); *see Hopkins v. Bonvicino*, 573 F.3d 752, 767

10   (9th Cir. 2009) "[S]tatements from a witness, without further investigation by the police, are

11   insufficient to support probable cause.")

12          Here, however, Deputy Defendants were within constitutional parameters to go to the

13   location of the Taylor/Lopez residence to talk to Plaintiff Taylor about the Lopez 911 call.

14   "Officers ha[ve] a duty to conduct an investigation into the basis of [a] witness' report." *Fuller v.*

15   *M.G. Jewelry,* 950 F.2d 1437, 1444 (9th Cir.1991).  Indeed, in *Struckman,* the Ninth Circuit

16   stated the officers acted properly by going to the location of the incident first, without first

17   confirming the witness's report.  The Ninth Circuit characterized going to the location of the

18   incident first, without talking to the 911 caller beforehand, as good police practice: "There was no

19   surface reason to discredit that Ms. Grimes saw what she said she saw, or knew what she said she

20   knew. So the fact that the police officers went to the house in response to Ms. Grimes's 911

21   report to look around the area and, perhaps, ask questions was consistent with what citizens

22   expect from law enforcement."  *Struckman*, 603 F3d at 741; *Williams v. Mata*, 230 F.3d 1369 (9th

23   Cir. 2000) (where officer has conflicting evidence about a crime, a reasonable officer would have,

24   at minimum, interviewed suspect before arresting him).  Thus, good police practice of first

25   speaking to the suspect before arrest is not violative of the constitution.

26          Moreover, contrary to what occurred in *Struckman*, here, it is largely undisputed that the

27   officers went to the scene of Taylor/Lopez residences to investigate the Lopez 911 call, not to

28   arrest Plaintiff Taylor.  It is undisputed that the purpose of going to the scene "was to make a

preliminary determination as to whether or not a crime had been committed." (Doc. 101, ¶7.) It is also undisputed that the officers were "investigating [ ] discharging a firearm in an unsafe manner near a dwelling." (Doc. 101, ¶8.) The officers understood they were responding to a call of "one shooting too close to a residence by a neighbor." (Doc. 101, ¶9.) There is no evidence that the officers went to the scene of Taylor/Lopez residence for the purpose of arresting Plaintiff Taylor for the discharge of a gun. The undisputed evidence is that the officers went to the scene of the Taylor/Lopez residences to investigate whether or not shots had been fired.

Plaintiffs misconstrue the *de facto* policy and constitutionally protected investigation. Here, as in *Struckman*, the officers went to Plaintiffs' residence because of information obtained from the 911 call. The officers learned there was gunshot(s) fired near the Lopez property line specifically by Plaintiff Taylor. (Doc. 101, ¶¶1, 2.) It is undisputed that the Deputy Defendants were going to his residence "to make a preliminary determination as to whether a or not a crime had been committed" and were "investigating [ ] discharging a firearm an unsafe manner near a dwelling." There is no evidence that the officers went to Plaintiff Taylor's residence for the purpose of arresting Plaintiff Taylor for gun shots fired. Officers are constitutionally permitted to respond to the location of the shot fired call without having to first contact the person making the 911 call. *See Struckman*, 603 F.3d at 741 (good police practice includes, first, responding to the location of a reported 911 call). The Deputy Defendants were within constitutional parameters of first responding to Plaintiff Taylor's residence without speaking to Mr. or Mrs. Lopez before doing so.

Significantly, any *de facto* policy of not contacting the 911 caller first is not at play in this case because Plaintiff Taylor was not arrested for discharge of a weapon, which was the subject of the 911 call. Rather, Plaintiff was arrested for conduct which occurred while in the presence of the Deputy Officers as they were speaking with him. Plaintiff was arrested for violation of Penal Code 148(a) for obstructing the officers' investigation, and not for anything involving the shooting of a firearm. (Doc. 101, ¶¶ 72, 81, 82.) Plaintiff was not arrested for willfully discharging firearm in grossly negligent manner in violation of California Penal Code § 246.3(a).

Because the Deputy Defendants acted within constitutional parameters by going to speak

with Plaintiff Taylor before contacting the 911 caller, there can be no violation of a *de facto* failure to investigate.  The *Monell* claim fails because there is no underlying constitutional violation for failure to investigate.  If no constitutional violation occurred, the municipality cannot be held liable."  *Long v. City and County of Honolulu*, 511 F.3d 901, 907 (9th Cir. 2007).  *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) (If no constitutional violation occurred, the municipality cannot be held liable and whether "the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point.")

Plaintiffs do not cite evidence of a formal governmental policy to forego an initial investigation of whether or not a crime had been committed in instances of shots-fired calls before deputies arrest a party.  Absent a formal governmental policy, Plaintiffs must show a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).  The custom must be so "persistent and widespread" that it constitutes a "permanent and well settled city policy." *Id.* (quoting *Monell*, 436 U.S. at 691).  "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy."  *Id.* Plaintiffs present evidence that it was common procedure not to contact the reporting party on a shots-fired call.  (PSSUF at ¶¶ 102, 103).  Evidence of such a custom or procedure does not establish that there is a longstanding practice or custom of arresting suspects in shots-fired calls without an investigation, that arrests are made solely based on the claim of a reporting witness or even that the initial report of shots-fired fails to satisfy the County's policy.

Plaintiffs also contend that they are entitled to summary judgment based on the ratification of the Deputy Defendants' conduct by the Sheriff and the Undersheriff.  A *Monell* claim under a theory of ratification exists when "an official with final policymaking authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992).  "[R]atification requires, among other things, knowledge of the alleged constitutional violation." *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999).

1    Because the Court finds that no constitutional violation occurred by the *de facto* investigation, the

2    ratification of the Deputy Defendants' conduct by the Sheriff and the Undersheriff does not

3    support liability.

4         For these reasons, Defendants County and Basilio are entitled to summary judgment on

5    Plaintiffs' claim for municipal liability/supervisory liability.

6         **C.      Plaintiffs' Bane Act Claims**

7         Plaintiffs contend that the Deputy Defendants violated the Bane Act "because they

8    unlawfully entered Taylor's backyard and unlawfully arrested him at the point of loaded

9    weaponry.  (Doc. No. 85-1 at 50.)  Defendants argue that Plaintiffs' Bane Act cause of action fails

10   because there was no violation of a constitutional right and the Deputy Defendants acted lawfully

11   "because they acted with probable cause, exigent circumstances, under the community caretaker

12   exception, and their conduct itself was lawful."  (Doc. No. 95 at 26.)

13        The Bane Act provides a right of action to "[a]ny individual whose exercise or enjoyment

14   of rights secured by the Constitution or laws of the United States, or of rights secured by the

15   Constitution or laws of [California] has been interfered with" by another person's "threats,

16   intimidation, or coercion." Cal. Civ. Code § 52.1(b)–(c). To prove a case under the Bane Act a

17   plaintiff must show "'a specific intent to violate the arrestee's right to freedom from unreasonable

18   seizure.'" *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018) (citing *Cornell v.

19   City and County of San Francisco*, 17 Cal. App. 4th, 766, 801 (2017)). A "mere intention to use

20   force that the jury ultimately finds unreasonable—that is, general criminal intent—is

21   insufficient." *Reese*, 888 F.3d at 1045 (citing *United States v. Reese*, 2 F.3d 870, 885 (9th Cir.

22   1993) (internal quotations omitted)). Instead, "the jury must find that the defendants intended not

23   only the force, but its unreasonableness, its character as more than necessary under the

24   circumstances." *Id.* (internal quotations omitted). However, it is not necessary for defendants to

25   have been thinking in "constitutional or legal terms at the time of the incidents, because reckless

26   disregard for a person's constitutional rights is evidence of a specific intent to deprive that person

27   of those rights." *Id.* at 1045.

28        The inquiry into specific intent focuses on (1) whether "the right at issue [was] clearly

1   delineated and plainly applicable under the circumstances of the case"; and (2) whether the

2   "defendant commit[ed] the act in question with the particular purpose of depriving the citizen

3   victim of his enjoyment of the interests protected by that right?" *Sandoval v. Cty. of Sonoma*, 912

4   F.3d 509, 520 (9th Cir. 2018), cert. denied sub nom. *Cty. of Sonoma v. Sandoval*, 140 S. Ct. 142

5   (2019) (internal quotations and citation omitted). If both requirements are met, "specific intent

6   can be shown 'even if the defendant did not in fact recognize the unlawfulness of his act' but

7   instead acted in 'reckless disregard' of the constitutional right." *Id.* (citing *Cornell,* 17 Cal. App.

8   5th at 803).

9        Because Plaintiffs' Bane Act claims are, at a minimum, predicated on the same facts as

10   the unlawful entry, arrest and excessive force claims (*see* Doc. No. 104 at 14), and genuine

11   disputes of fact exist with respect to those claims, summary judgment cannot be granted.

12       **D. Plaintiffs' Remaining State Law Claims**

13       Plaintiffs seek summary judgment on the false arrest claim.  Defendants, however, seek

14   summary judgment on each of Plaintiffs' state law claims, including those for assault and battery,

15   false arrest/false imprisonment, negligence, and intentional infliction of emotional distress against

16   the County of Calaveras and the Deputy Defendants.

17       **1.  Assault and Battery**

18       Under California law, "claims for assault and battery against peace officers should be

19   resolved under the same liability standard as 42 U.S.C. § 1983 excessive force causes of action."

20   *Briley v. City of Hermosa Beach*, No. CV05-8127AG(SHX), 2008 WL 4443894, at *3 (C.D. Cal.

21   Sept. 29, 2008) (citing *Saman v. Robbins*, 173 F.3d 1150, 1156 n. 6 (9th Cir. 1999) (applying the

22   same standard for excessive force for both federal and California law); *Susag v. Lake Forest*, 94

23   Cal.App.4th 1401, 1415 (2002) (adopting federal § 1983 standards for resolution of state law tort

24   claims against peace officers)); *Olvera v. City of Modesto*, 38 F.Supp.3d 1162, 1181 (E.D. Cal.

25   2014). "Thus, if a court finds that police officers did not use excessive force against a plaintiff

26   under federal law, it should also find no assault and battery under state law. Alternatively, if a

27   court finds that police officers did use excessive force against a plaintiff under federal law, it

28   should find assault and battery under state law." *Briley*, 2008 WL 4443894, at *3.

1    Defendants' argument that this claim fails as to the Deputy Defendants is derivative of

2    their argument that these defendants did not use excessive force under the Fourth Amendment.

3    The Court has concluded that a jury could find that excessive force was used, and accordingly,

4    there is also a triable issue as to Plaintiffs' assault and battery claims.

5    Defendants additionally argue that the Deputy Defendants, and by extension the County,

6    are entitled to discretionary immunity pursuant to Cal. Gov. Code §§ 820.2.[9]  However, as a

7    matter of law, the Ninth Circuit has found that discretionary immunity does not apply to state

8    common law claims for assault and battery.  *Sharp v. Cty. Of Orange*, 871 F.3d 901, 920 (9th Cir.

9    2017) (finding asserted immunity under 820.2 did not apply as a matter of law to common-law

10   claims for assault and battery against officers); *Blankenhorn v. City of Orange,* 485 F.3d 463, 487

11   (9th Cir. 2007) (noting that 820.2 does not apply to officers who use unreasonable force in

12   making an arrest); *see also Eatherton v. Cty. of Riverside,* No. EDCV 18-244 9PSG (KKx), 2020

13   WL 3881605, at *14 (C.D. Cal. May 7, 2020) (concluding discretionary immunity under 820.2

14   did not apply to state law claim for assault and battery against police officers).

15                    **2.   False Arrest**

16   The parties both move for summary judgment on Plaintiff Taylor's false arrest/false

17   imprisonment claims.  In California, false imprisonment is "the unlawful violation of the personal

18   liberty of another." *Asgari v. City of Los Angeles*, 15 Cal.4th 744, 757 (1997). False

19   imprisonment requires "the nonconsensual, intentional confinement of a person, without lawful

20   privilege, for an appreciable length of time, however short." *George v. City of Long Beach*, 973

21   F.2d 706, 710 (9th Cir. 1992) (quotations omitted). False arrest is not a separate tort, but merely

22   one manner of committing a false imprisonment. *Collins v. City & Cty. of San Francisco*, 50

23   Cal.App.3d 671, 673 (Ct. App. 1975).

24   _____

25   [9]  Based on California Government Code section 815.2(a): "A public entity is liable for injury
     proximately caused by an act or omission of an employee of the public entity within the scope of

26   his employment if the act or omission would, apart from this section, have given rise to a cause of
     action against that employee or his personal representative." Under section 815(2)(b), a public

27   entity is not liable for an injury resulting from an act or omission of an employee where the
     employee is immune from liability.  Defendants claim that if the Deputy Defendants are entitled

28   to immunity, then the County also is immune.

33

Plaintiff Taylor maintains that his Fourth Amendment claims under § 1983 and false arrest claims under state law stand or fall together.   Given the Court's determination that there are genuine factual disputes concerning Plaintiffs' Fourth Amendment claims precluding summary judgment, the Court finds that summary judgment on Plaintiff Taylor's false arrest/false imprisonment claims cannot be granted based on the factual disputes.

Defendants additionally argue that the Deputy Defendants, and by extension the County, are entitled to discretionary immunity pursuant to Cal. Gov. Code. §§ 820.2.  However, section 820.2 immunity does not apply to false arrest claims because a decision to arrest is not a basic policy decision but instead "only an operational decision by the police purporting to apply the law." *Liberal v. Estrada*, 632 F.3d 1064, 1085 (9th Cir. 2011) (finding immunity provided by California Government Code § 820.2 does not apply to claims of false imprisonment or false arrest predicated on an officer's detaining a suspect without reasonable suspicion or probable cause).

### 3.  Negligence

Plaintiffs forward a claim for negligence against the County, Deputy Defendants and Defendant DiBasilio.  Defendants move for summary judgment on the grounds that the deputies "breached no duty in their conduct."  (Doc. No. 95 at 28.)

The essential elements of a negligence claim in California are: (1) a duty of care, (2) a breach of that duty, (3) causation, and (4) damages. *See Ladd v. Cty. of San Mateo*, 12 Cal. 4th 913, 917 (1996). Where a claim is based on negligence of a peace officer, it is "long-established principle …" that the reasonableness of a peace officer's conduct must be determined in light of the totality of circumstances." *Hayes v. Cty. of San Diego*, 57 Cal.4th 622, 632 (2013). A peace officer's use of excessive force may form the basis for a state law negligence claim. *See Young v. Cty. of Los Angeles*, 655 F.3d 1156, 1170 (9th Cir. 2011).

Plaintiffs' claim for negligence essentially dovetails with their claim for excessive force, unlawful arrest and unlawful entry under § 1983.  (Doc. No. 1 at ¶ 59; Doc. No. 99 at 25-26.) Given the factual disputes underlying the § 1983 claims, summary judgment on the negligence claim also should be denied.

As with Plaintiffs' state law claims for assault and battery and false arrest/false imprisonment, Defendants argue that they, and by extension the County, are entitled to discretionary immunity pursuant to Cal. Gov. Code. § 820.2.  Insofar as Plaintiffs' negligence claims are premised on allegations of excessive force or decisions to arrest or investigate, discretionary immunity does not apply.  *Blankenhorn*, 485 F.3d at 487; *Acosta v. California Highway Patrol*, No. 18-CV-00958-BLF, 2019 WL 2579202, at *15 (N.D. Cal. June 24, 2019); *see also Liberal*, 632 F.3d at 1085; *So v. Bay Area Rapid Transit,* No. C-12-05671 DMR, 2013 WL 5663207, at *7 (N.D. Cal. Oct. 17, 2013) ("Decisions to arrest or investigate are generally ministerial acts, except in certain fact-specific situations.").

### 4.   Intentional Infliction of Emotional Distress

Plaintiffs allege intentional infliction of emotional distress against the County and Deputy Defendants.  In California, the elements for a claim of intentional infliction of emotional distress are (1) extreme and outrageous conduct by the defendant with the intent of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff suffering severe emotional distress; and (3) actual and proximate causation. *Hughes v. Pair*, 46 Cal.4th 1035, 1050 (2009).

Plaintiffs' claim for intentional infliction of emotional distress is premised on a violation of Plaintiffs' Fourth Amendment rights "under threat of deadly force." (Doc. No. 99 at 24.)  The use of excessive force may constitute outrageous conduct and give rise to a claim for intentional infliction of emotional distress.  *Blankenhorn*, 485 F.3d 463, 463 n. 17 (9th Cir.2007).  Given the factual disputes underlying Plaintiffs' excessive force claims, Defendants are not entitled to summary judgment on this claim.  As indicated above, Defendants also are not entitled to discretionary immunity premised on allegations of excessive force.  *Id.*  487 (noting that 820.2 does not apply to officers who use unreasonable force in making an arrest).

### E.   Doe Defendants

At the hearing, Plaintiffs agreed to voluntary dismissal of all remaining Doe Defendants, 1-50.

1

### F. Declaratory Relief

2    Plaintiffs seek a declaration of the parties' rights and duties with respect to the County's

3 custom and practice of failing to investigate to determine whether or not a crime has been

4 committed.  (Doc. No. 85-1 at 47.) In short, Plaintiffs' request for declaratory relief is premised

5 on its *Monell* policy, custom and procedure claim.  Because Plaintiffs' *Monell* claim cannot

6 survive summary judgment, Plaintiffs' corresponding request for declaratory relief will not be

7 granted.

8

### G. Injunctive Relief

9    Plaintiffs seek a preliminary injunction that the County cease its alleged custom and

10 practice of failing to investigate 911 calls.  (Doc. No. 85-1 at 46.)  As with the request for

11 declaratory relief, Plaintiffs' request for injunctive relief is premised on its *Monell* policy, custom

12 and procedure claim.   Because Plaintiffs' *Monell* claim cannot survive summary judgment,

13 Plaintiffs' corresponding request for injunctive relief will not be granted.

14

### H. Punitive Damages

15    Defendants move for summary judgment on Plaintiffs' claim for punitive damages under

16 state and federal law.  Punitive damages may be awarded in a § 1983 action "when the

17 defendant's conduct is shown to be motivated by evil motive or intent, or when it involves

18 reckless or callous indifference to the federally protected rights of others." *Dang v. Cross*, 422

19 F.3d 800, 807 (9th Cir. 2005).  A § 1983 punitive damages claim is subject to summary

20 adjudication "where plaintiff fails to produce evidence raising a material question of fact

21 regarding aggravating circumstances or the reckless or callous nature of defendant's actions."

22 *Megargee v. Wittman*, 550 F.Supp.2d 1190, 1214 (E.D. Cal. 2008) (quoting *Kyle v. Patterson*,

23 196 F.3d 695, 698 (7th Cir. 1999)). Under California law, a plaintiff may seek punitive damages

24 "where it is proven by clear and convincing evidence that the defendant has been guilty of

25 oppression, fraud, or malice." Cal. Civ. Code § 3294(a).

26    As discussed above, the parties here each produce evidence giving rise to a material

27 dispute of fact about whether Plaintiff Taylor posed a threat to the safety of the Deputy

28 Defendants.  Depending on how the jury determines the facts in this case, a reasonable juror

could also conclude that one or more of the Deputy Defendants acted with reckless disregard (or malice) to the Plaintiffs' Fourth Amendment rights in arresting Plaintiff Taylor or using force. Therefore, summary judgment is not appropriate on the issue of punitive damages, and the Deputy Defendants' motion in that regard is denied.

Defendants also contend that California Government Code § 818 precludes an award of punitive damages against a public entity. California law provides that "a public entity is not liable for damages awarded under Section 3294 of the Civil Code [exemplary damages] or other damages imposed primarily for the sake of example and by way of punishing the defendant." Cal. Gov't Code § 818. Public entities are immune from punitive damages under § 1983 and California law. *S.T. by & through Niblett v. City of Ceres,* 327 F. Supp. 3d 1261, 1283 (E.D. Cal. 2018), citing *City of Newport v. Fact Concerts, Inc*., 453 U.S. 247, 271 (1981)  Therefore, Defendants' motion for summary judgment precluding punitive damages against the County is granted.

**VII.    Conclusion and Order**

For the reasons stated, IT IS HEREBY ORDERED as follows:

1. DOE Defendants 1-50 are DISMISSED from this action;

2. Plaintiff Taylor's claim of deliberately fabricated evidence in violation of his Fourth and Fourteenth Amendment rights is DISMISSED;

3. Plaintiffs' motion for partial summary judgment is DENIED;

4. Plaintiffs' requests for declaratory and injunctive relief are DENIED;

5. Defendants' motion for summary judgment is GRANTED as to the following matters;

   a. Plaintiffs' claim for municipal and supervisory liability against Defendant County of Calaveras and Defendant DiBasilio; and

   b. Plaintiffs' punitive damages claim against the County of Calaveras;

6. Defendants' motion for summary judgment is otherwise DENIED; and

7. This matter is set for a STATUS CONFERENCE on **January 11, 2021, at 9:00 AM in Courtroom 8 (BAM) before the undersigned.** The parties shall appear at the conference with each party connecting remotely either via Zoom video conference or

1    Zoom telephone number.  The parties shall be provided with the Zoom ID and

2    password by the Courtroom Deputy prior to the conference.  The Zoom ID number

3    and password are confidential and are not to be shared.  Appropriate court attire

4    required.

5

IT IS SO ORDERED.

6

7    Dated:   **December 16, 2020**          /s/ *Barbara A. McAuliffe*

8                                    UNITED STATES MAGISTRATE JUDGE